# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Top Tobacco, *et al.*, | |
| Plaintiffs, | Case No. 14 C 8981 |
| v. | |
| Fantasia Distribution Inc., | Judge John Robert Blakey |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

This matter involves a trademark related dispute between manufacturers and distributors of tobacco. Plaintiffs brought suit against Defendant for: (1) trademark infringement in violation of 15 U.S.C. § 1114(1)(a); (2) unfair competition in violation of 15 U.S.C. § 1125(a); (3) deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act ("DTPA"); and (4) unfair competition in violation of Illinois common law. Plaintiffs Top Tobacco and Republic Tobacco are tobacco manufacturers and distributors that specialize in cigarette, pipe and other types of tobacco. [1] at ¶ 9. Defendant Fantasia Distribution, also a tobacco manufacturer, specializes in hookah and molasses tobacco. [1] at ¶ 15. Defendant moved under Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint in its entirety, but did not specifically address any individual count. [11]. For the reasons stated below, the Court denies that motion.

1

## I. Background

Plaintiff Top Tobacco, L.P. ("Top") distributes and sells smokers' articles, including tobacco and tobacco-related products. [1] at ¶ 9. Plaintiff Republic Tobacco, L.P. ("Republic") is Top's exclusive distributor. *Id*. Plaintiffs distribute their goods to wholesalers, retailers, and resellers throughout the United States, including tobacco shops, drugstores, tobacco outlets, novelty stores and convenience stores. *Id*. Defendant, "on information and belief . . . produces, markets, distributes and sells tobacco, namely hookah and molasses tobacco," online and in retail stores throughout the United States, including tobacco shops, novelty stores and convenience stores. *Id*. at ¶ 15.

In 1993, Top began using the "FOUR ACES" mark "in connection with a unique blend of tobacco" for smokers. *Id*. at ¶¶ 7, 11. On July 5, 1994, Plaintiffs registered the FOUR ACES mark in the Principal Register of the United States Patent and Trademark Office ("USPTO"). *Id*. at ¶ 14, Ex. B. Plaintiffs claim that, "since its introduction to the market in 1993, the FOUR ACES tobacco product packaging has consistently and prominently featured the Ace of Spades, Ace of Hearts, Ace of Diamonds and Ace of Clubs playing cards." *Id*. at ¶ 11. Plaintiffs also claim that they have "devoted significant time, effort and resources to marketing and promoting tobacco under and in connection with the FOUR ACES mark," and that the "consistent use of playing cards . . . reinforces the consumer recognition, and forms part of the commercial impression, of the FOUR ACES

mark," which has since acquired "consumer goodwill," "distinctiveness and secondary meaning signifying Top Tobacco and its products." [1] at ¶¶ 11-13.

Plaintiffs allege that "on or about September 12, 2013, Defendant filed an application with the [USPTO] to register the mark ACE OF SPADES for use in connection with hookah tobacco and molasses tobacco," and that "[o]n information and belief, Defendant's tobacco products sold under the ACE OF SPADES mark prominently feature an image of the ace of spades playing card on the product packaging." *Id*. at ¶ 16. Plaintiffs therefore "informed Defendant that its use and registration of the ACE OF SPADES mark and use of the ace of spades on Defendant's tobacco product packaging infringed" Top's rights in its registered FOUR ACES mark, and "accordingly demanded that Defendant abandon its application and cease all use of the term ACE OF SPADES, and any designations confusingly similar thereto, in connection with its marketing and distribution of hookah and molasses tobacco." *Id*. at ¶ 17.

Defendant allegedly refused to abandon its USPTO application and continued to use the ACE OF SPADES mark "in connection with the production, promotion, sale and distribution of tobacco." *Id*. at ¶ 18. Plaintiffs claim that Defendant's ACE OF SPADES mark and the ace of spades playing card on its product packaging "will lead the public to believe incorrectly that Top Tobacco is the source of, has endorsed or approved, or is somehow associated with, Defendant or its goods." *Id*. at ¶ 19.

## II. Legal Standard

Under Rule 12(b)(6), this Court must construe the Complaint in the light most favorable to Plaintiffs, accept as true all well-pleaded facts and draw reasonable inferences in their favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Statements of law, however, need not be accepted as true. *Yeftich*, 722 F.3d at 915. To survive Defendant's motion under Rule 12(b)(6), the Complaint must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

## III. Analysis

Plaintiffs' Complaint includes four causes of action: (1) trademark infringement under 15 U.S.C. § 1114 in Count I; (2) unfair competition under 15 U.S.C. § 1125 in Count II; (3) deceptive trade practices under the DTPA in Count III, 815 Ill. Comp. Stat. Ann. 510/1; and (4) unfair competition under Illinois common law in Count IV. [1] at ¶¶ 20-40.

Although Defendant moved to dismiss the entire Complaint and did not address each count individually [12], each of the claims at issue in this motion involve the "same elements and proofs." *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005, 1012-13 (N.D. Ill. 2014) (citing *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 619 (7th Cir. 1993); *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994). Thus, because each cause of action alleged here requires the same elements of pleading, Defendant's Motion to Dismiss will be addressed as challenging all of them – and all counts with be analyzed as one. *Id.*

To state a claim under the causes of action asserted here, a plaintiff must establish that: (1) the mark at issue is protectable, and (2) the defendant's use of the mark is likely to cause confusion among consumers. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000)); *see also KJ Korea*, 66 F. Supp. 3d at 1012 (citations omitted).

### A. Protectable Mark

A plaintiff can allege a protectable mark by either: (1) alleging that the mark is registered in the USPTO, which provides "prima facie" evidence of the validity, ownership and exclusive right to use the registered mark; (2) alleging a mark registered in the Supplemental Register, which is not entitled to presumption of validity because it is only "capable" of becoming a trademark; or (3) alleging an unregistered mark that is entitled to protection under section 1125 of the Lanham

Act. *KJ Korea*, 66 F. Supp. 3d at 1013 (citing 15 U.S.C. § 1057(b); *Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 727 (7th Cir. 1998)).

Here, Plaintiffs allege that the FOUR ACES mark has been registered in the USPTO Principal Register since 1994 and attached a copy of its registration to the Complaint. [1] at 14, Ex. B. Because the Court may consider, "documents that are attached to the complaint [and] documents that are central to the complaint and are referred to in it," *Williamson*, 714 F.3d at 436, and because all well-pleaded facts must be accepted as true, *Yeftich*, 722 F.3d at 915, Plaintiffs have a presumed protectable right to the FOUR ACES mark under § 1057(b). Defendant does not contest this. Plaintiffs therefore sufficiently allege a protectable mark at this stage.

### B. Likelihood of Confusion

Plaintiffs allege that Defendant's mark and product packaging are "likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendant with Plaintiffs," and that Defendant is deliberately and willfully misappropriating Plaintiffs' goodwill and consumer recognition in the FOUR ACES mark. [1] at ¶¶ 20-40. Defendant argues that likelihood of confusion between the two marks is "too implausible to withstand dismissal." [12] at 5.

"Seven factors comprise the likelihood of confusion analysis: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the plaintiff's mark; (6) actual confusion; and (7) intent of the defendant to 'palm off' his product as that of another.'" *Packman*, 267 F.3d at

6

643 (citing *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 897-98 (7th Cir. 2001)); *see also KJ Korea*, 66 F. Supp. 3d at 1015 (employing the seven-factor likelihood of confusion test at the motion to dismiss stage). "No single factor is dispositive, and courts may assign varying weights to each of the factors depending on the facts presented, although, in many cases, the similarity of the marks, the defendant's intent, and actual confusion are particularly important." *Packman*, 267 F.3d at 643.

The *KJ Korea* case is particularly instructive here. In that case, the plaintiffs sold "nutritional supplements, massage instruments, and other health products in association with three marks, all of which read 'Health Korea' in Korean or both Korean and English." *KJ Korea*, 66 F. Supp. 3d at 1009. The plaintiffs' complaint alleged seven different causes of action, including all four of the causes asserted by Plaintiff here, claiming that the defendants infringed each of plaintiffs' marks by allegedly operating a retail store named and labeled "Health Korea" and publishing newspaper advertisements displaying the English words "HEALTH KOREA." *Id.* at 1010. Defendant moved to dismiss all counts and the court – in addressing that motion – conducted the seven-factor likelihood of confusion test. It observed that the plaintiffs' complaint alleged facts relating to all but the fourth factor, and analyzed the sufficiency of the factual allegations for each factor. *Id.* at 1015-18. The court determined that the plaintiffs pled sufficient facts to state a plausible claim on each of the plaintiffs' theories, including those alleged by Plaintiff here – 15 U.S.C. §§ 1114 and 1125, the Illinois DPTA, and unfair competition under Illinois common law. *Id.* at 1015.

In this case, Plaintiffs have alleged sufficient facts pertaining to at least four of the seven factors: similarity between the marks in appearance and suggestion (first factor); similarity of the products (second factor); area and manner of concurrent use (third factor); and strength of the plaintiff's mark (fifth factor). Accordingly, as set forth in more detail below, their complaint has adequately pled each of its four causes of action based upon the record before this Court.

1. **Similarity between the Marks**

Plaintiffs have adequately pled a similarity between their mark and the mark used by the Defendant. The "likelihood of confusion test is a fact-intensive analysis," that "ordinarily does not lend itself to a motion to dismiss." *Slep-Tone Entertainment Corp. v. Coyne*, 41 F. Supp. 3d 707, 715 (N.D. Ill. 2014) (citing *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006); *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 769 (N.D. Ill. 2008)). Rather, the test is "best left for decision after discovery." *Vulcan Golf*, 552 F. Supp. 2d at 769. Thus, this Court's role at the motion to dismiss stage "is limited to assessing whether [Plaintiffs have] pleaded facts that plausibly could result in a successful outcome on the likelihood of confusion element of [their] claim." *Slep-Tone*, 41 F. Supp. 3d at 715.

Here, Plaintiffs allege, "on information and belief, Defendant's tobacco products sold under the ACE OF SPADES mark prominently feature an image of the ace of spades playing card on the product packaging." [1] at 5. Thus, the comparison is between the "FOUR ACES" registered mark and the Defendant's

"ACE OF SPADES" label. Defendant, however, points out that "[t]he sole facts [Plaintiffs rely] on to suggest likelihood of confusion . . . is the marks' sharing a form of the word 'ace' and [Plaintiffs'] unregistered trade dress including an ace of spades, along with other playing cards." [12] at 6.

However, "courts compare marks in light of what happens in the marketplace, not merely by looking at the two marks side-by-side." As in *KJ Korea*, Defendant's argument "may have merit in a future phase of litigation," but it does not warrant dismissal under Rule 12(b)(6). *KJ Korea*, 66 F. Supp. 3d at 1015 (quoting *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). The factual allegations in the complaint regarding the first factor are sufficient to raise the possibility of relief above the speculative level.

2. **Similarity of the products**

"In examining the second factor . . . courts ask whether the products are the kind the public attributes to a single source." *KJ Korea*, 66 F. Supp. 3d at 1015 (quoting *Ty, Inc.*, 237 F.3d at 899) (internal quotations omitted). In *KJ Korea*, the plaintiff sufficiently alleged that both plaintiff and defendant "produced nutritional supplements, massage apparatuses, and health food products in association with their respective marks." *Id.* at 1016.

Here, Plaintiffs allege that they and Defendant both produce and market tobacco, and distribute and sell to tobacco shops, novelty, convenience and other retail stores throughout the United States. [1] at 5. Although Defendant argues that, unlike Plaintiffs, it specifically produces hookah and other flavored tobacco,

9

the products are similar enough to raise the possibility of relief above the speculative level. *See E.E.O.C.*, 496 F.3d at 776.

### 3. Area and manner of concurrent use

"Under the third factor . . . courts assess whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties," *KJ Korea*, 66 F. Supp. 3d at 1016 (quoting *Ty, Inc.*, 237 F.3d at 900) (internal quotations omitted), including relative geographical distribution areas, evidence of direct competition between the products, whether products are sold to consumers in the same type of store or similar section of a particular store, and whether the product is sold through the same marketing channels. *Id.* at 1016 (quoting *Ty, Inc.*, 236 F.3d at 900). In *KJ Korea*, the plaintiff sufficiently alleged that both it and the defendant sold their products in the Chicagoland area, and advertised their products nationwide, including in Chicago, through several Korean television stations and online. *Id.* at 1016.

Plaintiff Top Tobacco alleges that it, "through its exclusive distributor Republic Tobacco, distributes [its] goods to distributors, wholesalers, retailers, resellers and to consumers across the United States through tobacco shops, drugstores, tobacco outlets, novelty, convenience and other retail stores." [1] at 3. Plaintiffs allege that Defendant similarly sells its goods under the ACE OF SPADES mark throughout the United States in the same types of shops and retail stores. [1] at 5. Under the analysis of the third factor in *KJ Korea*, it is apparent

10

that both parties' goods would be sold in the same types of stores and even the same sections of stores. *See E.E.O.C.*, 496 F.3d at 776.

### 4. Strength of the plaintiff's mark

In evaluating the strength of Plaintiff's mark, the "courts examine the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular source." *KJ Korea*, 66 F. Supp. 3d at 1016 (quoting *Eli Lilly*, 233 F.3d at 464) (internal quotations omitted). In *KJ Korea*, the plaintiff alleged that, "over the last five years, [its] marks have acquired secondary meaning through the promotion and sale of associated goods and services nationwide and through more than one million dollars-worth of advertisements – an allegation that suggests an increasingly strong mark." *Id.* at 1016.

Similarly, Plaintiffs here allege significant time, effort and resources in "marketing and promoting tobacco under and in connection with the FOUR ACES mark," which as a result is "well-known and recognized by the public as identifying and distinguishing [its] products" and has gained consumer goodwill. [1] at 4. Moreover, Plaintiff alleges that its mark has been registered in the USPTO Primary Register since 1994. [1] at ¶ 14, Ex. B. Plaintiff has raised the possibility of relief on this factor above the speculative level. *See E.E.O.C.*, 496 F.3d at 776.

### 5. Actual confusion and intent to "palm off"

The sixth and seventh factors of the likelihood of confusion analysis are whether there is actual confusion between the marks and products at issue, and whether the Defendant intended to "palm off" its own product as Plaintiffs'. Under

11

the sixth factor . . . courts look to the confusion of reasonable and prudent consumers, and not to confusion among sophisticated members of industry," *KJ Korea*, 66 F. Supp. 3d at 1016. "Under the seventh factor . . . courts look primarily for evidence that the defendants are attempting to 'pass off' their products as having come from the plaintiff." *Id.* at 1017 (citing *Packman*, 267 F.3d at 644).

Based on the allegations in the Complaint, the sixth and seventh factors do not weigh particularly heavily in favor of or against likelihood of confusion because they are only supported by conclusions, not facts. In this case, Plaintiffs allege that Defendant's "infringing activities are likely to cause and actually are causing confusion . . . as to the origin and quality of defendant's . . . goods." [2] at 5. However, Plaintiffs do not provide any specific facts showing actual confusion between the two marks. Plaintiffs also allege, without providing any facts, that Defendant is intentionally using its ACE OF SPADES mark to profit off of the goodwill and consumer recognition of Plaintiffs' FOUR ACES mark, and that Defendant "deliberately and willfully used the ACE OF SPADES mark . . . to pass its tobacco product off as those of Top Tobacco." [1] at 6-7, 23.

Nevertheless, "the absence of factual allegations demonstrating actual confusion is not dispositive of the likelihood of confusion." *KJ Korea*, 66 F. Supp. 3d at 1016 (citing *Packman*, 267 F.3d at 643; *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001)). Here, though the sixth and seventh factors are not especially strong, Plaintiffs alleged facts pertaining to at least four of the seven factors considered in a likelihood of confusion claim, sufficient to "give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

**IV.     Conclusion**

In light of the foregoing, Defendant's motion to dismiss is denied.


Dated: September 3, 2015                              Entered:

_____
John Robert Blakey
United States District Judge